Alisa Rose Adams (Cal Bar #277697)
The DannLaw Firm
26100 Towne Center Drive
Foothill Ranch, CA 92610-3442
Telephone: (949) 200-8755
Facsimile: (866) 843-8308
notices@dannlaw.com
aadams@dannlaw.com

Additional counsel listed on signature page

Attorneys for Plaintiff and the Putative Classes

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATT HUBER, NATALYA KASHIRINA, CHRISTOPHER BARKER, and NAZIA BARKER,  individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>WELLS FARGO & COMPANY and WELLS FARGO BANK, N.A.,<br><br>        Defendants. | Case No.<br><br>Magistrate Judge<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>1. Violations of California Unfair Competition Law, Cal. Bus. and Prof. Code. § 17200, *et seq*.;<br>2. Violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*.;<br>3. Violations of Minnesota Consumer Protection Act, M.S.A. § 325F.68, *et seq*.;<br>4. Violations of Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, *et seq*.<br>5. Nevada Trade Regulations and Practices Act, Nev. Rev. Stat. § 598.0903, *et seq*.;<br>6. Unjust Enrichment;<br>7. Conversion; and<br>8. Invasion of Privacy by Intrusion Upon Seclusion<br><br>**DEMAND FOR JURY TRIAL** |

*CLASS ACTION COMPLAINT*

1

Plaintiffs Matt Huber ("Plaintiff Huber"), Natalya Kashirina ("Plaintiff Kashirina"), Christoper Barker ("Plaintiff C. Barker"), and Nazia Barker ("Plaintiff N. Barker") (collectively, "Plaintiffs") individually and on behalf of all others similarly situated, bring this Class Action Complaint against Defendants Wells Fargo & Company and Wells Fargo Bank, N.A. (collectively "Wells Fargo"), and make the following allegations based on personal knowledge as to facts pertaining to their own experiences and on information and belief as to all others.

## NATURE OF THE ACTION

1.     Wells Fargo unilaterally enrolled customers in various financial products or services they did not agree to and never knew about. Wells Fargo paid itself fees, costs, interest, and other consideration from the customers for these unwanted products and services, such as Credit Defense or Identity Theft Protection (to name just two examples).

2.     Wells Fargo's actions represent the latest episode in a series of similar abusive, fraudulent, and unlawful actions solely to extract additional fees, interest, incentive compensation, and revenues, treating customers' money as a resource to mine.

3.     Wells Fargo was subject to class and regulatory actions based on its fake accounts scandal that came to light in 2016. In September 2016, Wells Fargo was forced to acknowledge that it had created 1.5 million fake deposit accounts and more than 500,000 fake credit card accounts in customers' names without their knowledge or approval.[1] In addition, in 2022, Wells Fargo paid more than $2 billion to consumers and $1.7 billion in civil penalties after the Consumer Financial Protection Bureau ("CFPB") found Wells Fargo was mismanaging loan accounts by charging illegal fees and interest.[2]

---

[1] https://en.wikipedia.org/wiki/Wells_Fargo_cross-selling_scandal (last visited February 26, 2024).

[2] https://www.consumerfinance.gov/about-us/newsroom/cfpb-orders-wells-fargo-to-pay-37-billion

4.      On November 18, 2023, Wells Fargo sent a letter to Plaintiff Huber informing him that Wells Fargo's records indicated that he was "enrolled" in an "Identity Theft Protection – Affinion" product he never approved of, never wanted, and never knew about. Wells Fargo did not inform him of the time period in which he was enrolled in this product.

5.      On November 29, 2023, Wells Fargo sent a letter to Plaintiff Huber informing him that Wells Fargo's records indicated that he was "enrolled" in a "Credit Defense" product he never approved of, never wanted, and never knew about. According to the letter, Wells Fargo had him enrolled from April 9, 2020 – June 15, 2018.

6.      On December 1, 2023, Wells Fargo sent a letter to Plaintiff Huber informing him that Wells Fargo's records indicated that he was "enrolled" in an "Identity Theft Protection – Affinion" product he never approved of, never wanted, and never knew about. Wells Fargo did not inform him of the time period in which he was enrolled in this product.

7.      On November 30, 2023, Wells Fargo sent a letter to Plaintiff Kashirina informing her that Wells Fargo's records indicated that she was "enrolled" in an "Identity Theft Protection – Affinion" product she never approved of, never wanted, and never knew about. Wells Fargo did not inform her of the time period in which she was enrolled in this product.

8.      On December 6, 2023, Wells Fargo sent a letter to Plaintiff Kashirina informing her that Wells Fargo's records indicated that she was "enrolled" in an "Identity Theft Protection - Affinion" product she never approved of, never wanted, and never knew about. Wells Fargo indicated that she was enrolled in the program from November 15, 2013 to November 2, 2017.

9.      On December 1, 2023, Wells Fargo sent a letter to Plaintiff C. Barker informing him that Wells Fargo's records indicated that he was "enrolled" in an "Identity Theft Protection –

-for-widespread-mismanagement-of-auto-loans-mortgages-and-deposit-accounts/ (last visited February 26, 2024).

Affinion" product he never approved of, never wanted, and never knew about. Wells Fargo did not inform him of the time period in which he was enrolled in this product.

10.     On December 2, 2023, Wells Fargo sent a letter to Plaintiff C. Barker informing him that Wells Fargo's records indicated that he was "enrolled" in an "Identity Theft Protection – Affinion" product he never approved of, never wanted, and never knew about. Wells Fargo did not inform him of the time period in which he was enrolled in this product.

11.     On December 6, 2023, Wells Fargo sent a letter to Plaintiff C. Barker informing him that Wells Fargo's records indicated that he was "enrolled" in an "Identity Theft Protection – Affinion" product he never approved of, never wanted, and never knew about. Wells Fargo indicated that he was enrolled in the program from June 16, 2011 to August 6, 2012.

12.     On December 2, 2023, Wells Fargo sent a letter to Plaintiff N. Barker informing her that Wells Fargo's records indicated that she was "enrolled" in an "Identity Theft Protection – Affinion" product she never approved of, never wanted, and never knew about. Wells Fargo did not inform her of the time period in which she was enrolled in this product.

13.     Plaintiffs and others like them were "enrolled" in products and services that they never agreed to, never wanted, and never knew about for months, sometimes (as in Plaintiffs' case) years. During this time, Wells Fargo was extracting fees, interest, payments, and other considerations for these enrollments at Plaintiffs' and Class members' expense. Plaintiffs and Class members suffered actual damages, and were forced to pay fees, penalties, interest, and costs as a result of Wells Fargo's unlawful actions.

14.     Wells Fargo is now seeking to limit its liability for its unlawful and fraudulent conduct at its own customers' expense by attempting to pay its liabilities at bargain rates, hoping

its customers will accept the inadequate offer and not ask too many questions about how much customers are really owed.

15.    Plaintiffs bring this case against Wells Fargo for its violations of laws, including the Fair Credit Reporting Act, state unfair and deceptive trade practices laws, common law conversion, and unjust enrichment.

## **PARTIES**

16.    Plaintiff Matt Huber is and at all relevant times was a citizen of Minnesota. Plaintiff never agreed to or wanted Credit Defense or Identity Theft Protection at any time.

17.    Plaintiff Natalya Kashirina is and at all relevant times to the Complaint was a citizen of Florida.  Plaintiff never agreed to or wanted Identity Theft Protection at any time.

18.    Plaintiff Christopher Barker is and at all relevant times was a citizen of Nevada. Plaintiff never agreed to or wanted Identity Theft Protection at any time.

19.    Plaintiff Nazia Barker is and at all relevant times was a citizen of Nevada. Plaintiff never agreed to or wanted Identity Theft Protection at any time.

20.    Defendant Wells Fargo & Company is incorporated in Delaware with its principal place of business and corporate headquarters in San Francisco, California. Wells Fargo & Company is a financial services company with $1.875 trillion in assets, and provides banking, insurance, investments, mortgage, and consumer and commercial finance through more than 5,200 branches, 13,000 ATMs, and the Internet. It has approximately 238,700 employees as of 2022.

21.    Defendant Wells Fargo Bank, N.A. is a national banking association chartered under the laws of the United States with its primary place of business in Sioux Falls, South

Dakota. Wells Fargo Bank, N.A. provides Wells Fargo & Company personal and commercial banking services and is Wells Fargo & Company's wholly-owned, principal operating subsidiary.

## JURISDICTION AND VENUE

22.     This Court has original subject matter jurisdiction under 28 U.S.C. § 1332(d), because this case is brought as a class action, at least one class member is diverse from one Defendant, there are 100 or more Class members, and the aggregate amount in controversy exceeds $5 million.

23.     This Court alternatively has jurisdiction pursuant to 28 U.S.C. § 1331, as one of the causes of action arises out of Defendant's violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*.

24.     This Court has supplemental jurisdiction to hear all state law statutory and common law claims pursuant to 28 U.S.C. § 1367.

25.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2)–(3) because the Court has personal jurisdiction over Defendants, Defendants reside in this District, and a substantial part of the events or omissions giving rise to Plaintiffs' and Class members' claims occurred in this District.

## INTRADISTRICT ASSIGNMENT

26.     Pursuant to Civil L.R. 3-2(c), this case is properly assigned to the San Francisco or Oakland Division because a substantial part of the events or omissions that give rise to Plaintiffs' and Class members' claims occurred in San Francisco County.

## COMMON FACTUAL ALLEGATIONS

27.     Throughout late 2023 and early 2024, Wells Fargo sent notification letters to certain current and former customers informing them that Wells Fargo's records showed that they

were "enrolled" in one or more Wells Fargo products for a certain period of time identified on the letter. The letter goes on to say that "if you feel that the enrollment was unauthorized or not wanted by you," call a certain number so that Wells Fargo can "care for any impact" caused by the unauthorized enrollment.

28.     An image of one of these letters posted on X by @VivekChirps on February 20, 2024, shows that Wells Fargo enrolled Vivek in a product called Health Protector Bonus between March 2, 2010 and April 15, 2010.

29.     Vivek tweeted "I had moved on from fake account scam, insurance scam and other scams from Wells Fargo. Though all the issues were dealt with. And now I receive this letter from them notifying another scam!! How many more skeletons are hiding in $WFC closet?" Wells Fargo hopes to conceal the extent of the skeletons in its closet by quietly sending the letters and paying off its customers with inadequate offers. Plaintiffs, through this litigation, seek to obtain a true and accurate accounting of Wells Fargo's unlawful activities and the money it extracted from customers or otherwise obtained at their expense to make them whole.

30.     Wells Fargo hopes that many of the letters will be thrown out and/or disregarded. A post to Reddit.com's r/scams subreddit contained an image of a largely identical letter dated November 15, 2023, stating that recipient was enrolled in Identity Theft Protection-Affinion from May - July, 2021. Many people thought the letter was a scam and did not trust it.

**Plaintiff Huber**

31.     Wells Fargo sent a letter to Plaintiff Huber on November 18, 2023, notifying him that:

> During a recent review of our current and former customer accounts, our records indicated that you were enrolled in the Identity Theft Protection – Affinion product.

**What you need to know**
If you feel that the enrollment in this product was not authorized or not wanted by you, please call us within 60 days of the date of this letter so that we may care for any impact this enrollment may have caused. Otherwise, no action is needed.

**We're here to help**
If you have any questions regarding enrollment in this product, please call us at 1-877-642-7826, Monday through Friday 8:00 a.m. to 8:00 p.m. Central Time. We accept telecommunications relay service calls.

Thank you.

Wells Fargo Customer Care

32.    Wells Fargo sent a letter to Plaintiff Huber on November 29, 2023, notifying him that:

During a recent review of our current and former customer accounts, our records indicated that you were enrolled in the Credit Defense product. The enrollment began April 09, 2010 and ended June 15, 2018.

**What you need to know**
If you feel that the enrollment in this product was not authorized or not wanted by you, please call us within 60 days of the date of this letter so that we may care for any impact this enrollment may have caused. Otherwise, no action is needed.

**We're here to help**
If you have any questions regarding enrollment in this product, please call us at 1-877-642-7826, Monday through Friday 8:00 a.m. to 8:00 p.m. Central Time. We accept telecommunications relay service calls.

Thank you.

Wells Fargo Customer Care

33.    Wells Fargo sent a letter to Plaintiff Huber on December 1, 2023, notifying him that:

During a recent review of our current and former customer accounts, our records indicated that you were enrolled in the Identity Theft Protection – Affinion product.

**What you need to know**

*CLASS ACTION COMPLAINT*
8

If you feel that the enrollment in this product was not authorized or not wanted by you, please call us within 60 days of the date of this letter so that we may care for any impact this enrollment may have caused. Otherwise, no action is needed.

**We're here to help**
If you have any questions regarding enrollment in this product, please call us at 1-877-642-7826, Monday through Friday 8:00 a.m. to 8:00 p.m. Central Time. We accept telecommunications relay service calls.

Thank you.

Wells Fargo Customer Care

34.    Wells Fargo knew Plaintiff Huber never authorized these "enrollments." That is why Wells Fargo unilaterally discontinued the products without asking or obtaining authorization from Plaintiff Huber to terminate the products. Wells Fargo placed the onus on Plaintiff Huber to contact Wells Fargo if he felt "that the enrollment in this product was not authorized or not wanted." Wells Fargo imposed an arbitrary 60-day deadline in which Plaintiff Huber and Class members had to raise the dispute.

35.    Plaintiff Huber never authorized his enrollment in the Credit Defense or Identity Theft Protection products for which he was enrolled.

36.    Following the receipt of each letter Plaintiff Huber called the telephone number provided on the letter and spoke with a representative. During each call, the representative was unable to disclose details concerning the circumstances of Wells Fargo's unauthorized enrollment into these products.

### **Plaintiff Kashirina**

37.    Wells Fargo sent a letter to Plaintiff Kashirina on November 30, 2023, notifying her that:

During a recent review of our current and former customer accounts, our records indicated that you were enrolled in the Identity Theft Protection – Affinion product.

*CLASS ACTION COMPLAINT*
9

**What you need to know**
If you feel that the enrollment in this product was not authorized or not wanted by you, please call us within 60 days of the date of this letter so that we may care for any impact this enrollment may have caused. Otherwise, no action is needed.

**We're here to help**
If you have any questions regarding enrollment in this product, please call us at 1-877-642-7826, Monday through Friday 8:00 a.m. to 8:00 p.m. Central Time. We accept telecommunications relay service calls.

Thank you.

Wells Fargo Customer Care

38.    Wells Fargo sent a letter to Plaintiff Kashirina on January 31, 2024 notifying her of the contents of the November 20, 2023 letter but also again stating that "Upon further review, we identified that you are eligible for compensation…We apologize for any inconvenience this may have caused."

39.    Wells Fargo knew Plaintiff Kashirina never authorized these "enrollments." That is why Wells Fargo unilaterally discontinued the products without asking or obtaining authorization from Plaintiff Kashirina to terminate the products. Wells Fargo placed the onus on Plaintiff Kashirina to contact Wells Fargo if she felt "that the enrollment in this product was not authorized or not wanted." Wells Fargo imposed an arbitrary 60-day deadline in which Plaintiff Kashirina and Class members had to raise the dispute.

40.    Plaintiff Kashirina never authorized her enrollment in the Identity Theft Protection products for which she was enrolled.

41.    On or about December 13, 2023, Plaintiff Kashirina called the telephone number provided on the letter and spoke with a representative. During the call, the representative was unable to disclose details concerning the circumstances of Wells Fargo's unauthorized enrollment into these products.

*CLASS ACTION COMPLAINT*
10

**Plaintiff C. Barker**

42.     Wells Fargo sent a letter to Plaintiff C. Barker on December 1, 2023, notifying him that:

> During a recent review of our current and former customer accounts, our records indicated that you were enrolled in the Identity Theft Protection – Affinion product.
>
> **What you need to know**
> If you feel that the enrollment in this product was not authorized or not wanted by you, please call us within 60 days of the date of this letter so that we may care for any impact this enrollment may have caused. Otherwise, no action is needed.
>
> **We're here to help**
> If you have any questions regarding enrollment in this product, please call us at 1-877-642-7826, Monday through Friday 8:00 a.m. to 8:00 p.m. Central Time. We accept telecommunications relay service calls.
>
> Thank you.
>
> Wells Fargo Customer Care

43.     Wells Fargo sent a letter to Plaintiff C. Barker on December 2, 2023, notifying him that:

> During a recent review of our current and former customer accounts, our records indicated that you were enrolled in the Identity Theft Protection – Affinion product.
>
> **What you need to know**
> If you feel that the enrollment in this product was not authorized or not wanted by you, please call us within 60 days of the date of this letter so that we may care for any impact this enrollment may have caused. Otherwise, no action is needed.
>
> **We're here to help**
> If you have any questions regarding enrollment in this product, please call us at 1-877-642-7826, Monday through Friday 8:00 a.m. to 8:00 p.m. Central Time. We accept telecommunications relay service calls.
>
> Thank you.
>
> Wells Fargo Customer Care

44.     Wells Fargo sent a letter to Plaintiff C. Barker on December 6, 2023, notifying him that:

> During a recent review of our current and former customer accounts, our records indicated that you were enrolled in the Identity Theft Protection – Affinion product. The enrollment began June 16, 2011 and ended August 06, 2012.
>
> **What you need to know**
> If you feel that the enrollment in this product was not authorized or not wanted by you, please call us within 60 days of the date of this letter so that we may care for any impact this enrollment may have caused. Otherwise, no action is needed.
>
> **We're here to help**
> If you have any questions regarding enrollment in this product, please call us at 1-877-642-7826, Monday through Friday 8:00 a.m. to 8:00 p.m. Central Time. We accept telecommunications relay service calls.
>
> Thank you.
>
> Wells Fargo Customer Care

45.     Wells Fargo knew Plaintiff C. Barker never authorized these "enrollments." That is why Wells Fargo unilaterally discontinued the products without asking or obtaining authorization from Plaintiff C. Barker to terminate the products. Wells Fargo placed the onus on Plaintiff C. Barker to contact Wells Fargo if he felt "that the enrollment in this product was not authorized or not wanted." Wells Fargo imposed an arbitrary 60-day deadline in which Plaintiff C. Barker and Class members had to raise the dispute.

46.     Plaintiff C. Barker called the telephone number provided on the letters and spoke with a representative. During the call, the representative was unable to disclose details concerning the circumstances of Wells Fargo's unauthorized enrollment into these products.

**Plaintiff N. Barker**

47.     Wells Fargo sent a letter to Plaintiff N. Barker on December 2, 2023, notifying her that:

During a recent review of our current and former customer accounts, our records indicated that you were enrolled in the Identity Theft Protection – Affinion product.

**What you need to know**
If you feel that the enrollment in this product was not authorized or not wanted by you, please call us within 60 days of the date of this letter so that we may care for any impact this enrollment may have caused. Otherwise, no action is needed.

**We're here to help**
If you have any questions regarding enrollment in this product, please call us at 1-877-642-7826, Monday through Friday 8:00 a.m. to 8:00 p.m. Central Time. We accept telecommunications relay service calls.

Thank you.

Wells Fargo Customer Care

48.     Wells Fargo knew Plaintiff N. Barker never authorized this "enrollment." That is why Wells Fargo unilaterally discontinued the product without asking or obtaining authorization from Plaintiff N. Barker to terminate the product. Wells Fargo placed the onus on Plaintiff N. Barker to contact Wells Fargo if she felt "that the enrollment in this product was not authorized or not wanted." Wells Fargo imposed an arbitrary 60-day deadline in which Plaintiff N. Barker and Class members had to raise the dispute.

49.     As set forth above, Plaintiff C. Barker called the telephone number provided on the letters and spoke with a representative about Wells Fargo's enrollment of both Plaintiff C. Barker and Plaintiff N. Barker into this product. During the call, the representative was unable to disclose details concerning the circumstances of Wells Fargo's unauthorized enrollment into this product.

### **Wells Fargo's Misconduct**

50.     In a statement issued by Tom Goyda, Wells Fargo Senior Vice President, Media Relations Manager, to the Houston Chronicle, Mr. Goyda stated:

*CLASS ACTION COMPLAINT*
13

> While we cannot comment on regulatory matters, we continue to put legacy issues behind us as evidenced from this letter which covers a time period dating back more than one decade ago. . . . If customers have questions about these letters, they can call the toll-free number provided in the letter itself or contact Wells Fargo by calling the number on their account statement or 800-869-3557.[3]

51.     Wells Fargo unlawfully converted, transferred, and obtained fees, interest, penalties, and other benefits from its unauthorized enrollment of Plaintiffs and Class members in the at-issue products and services, which caused injury to Plaintiffs and Class members in an amount to be determined at trial.

52.     Wells Fargo's supposed olive branch is insufficient. Wells Fargo relies on the inconspicuous and suspicious nature of the letter to depress claims rates, shifting the burden on the customer to take action to dispute an "enrollment" that Wells Fargo knows to have been illegitimate. Wells Fargo has nothing on its website concerning the letters, which makes the letters seem even more suspicious. Wells Fargo relies on other additional procedural and administrative burdens to avoid, reduce, and delay its ultimate liability and sweep under the rug its long-standing, intentional misconduct.

53.     As Plaintiffs' experience shows, Wells Fargo refuses to provide sufficient information concerning the damages claims that Plaintiffs and Class members have in relation to Wells Fargo's unauthorized and unlawful conduct. Wells Fargo fails to provide information about any rights they have to obtain damages, what laws apply, what rights of action they may have, and what if anything they are giving up. Wells Fargo fails to provide any substantiation for the amount of money it wrongfully took from Plaintiffs and Class members.

54.     Wells Fargo waived, forfeited, and abandoned statutes of limitations that may be argued to apply to Plaintiffs' and Class members' claims through its actions in writing the letters

---

[3] https://www.houstonchronicle.com/business/article/what-to-know-about-wells-fargo-checks-18568099.php (last visited February 23, 2024).

and attempting to "care for any impact this enrollment may have caused" to Plaintiffs and Class members due to Wells Fargo's unlawful actions that give rise to this lawsuit.

55.     Wells Fargo also engaged in fraudulent concealment of Plaintiffs' and Class members' claims such that their causes of action never accrued under the discovery rule or are tolled under equitable doctrines so that their claims are timely. Wells Fargo surreptitiously used Plaintiffs' and Class members' banking information, credit information, and personal information, to determine which "products" to enroll them in, and concealed its actions by failing to comply with laws that require disclosures and information regarding the products in which they were enrolled. Wells Fargo engaged in fraud, concealment, and deceit in every banking statement it provided Plaintiffs and Class members that omitted the fact that they were enrolled in additional products that they never knew about, and were being charged fees, costs, interest, penalties, and other consideration for these products that they could not discover from reviewing their bank statements and financial records. By doing so, Wells Fargo actively concealed its misconduct so that Plaintiffs and Class members could not reasonably discover it.

## CLASS ALLEGATIONS

56.     Plaintiffs bring this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3), on behalf of Plaintiffs and the Class defined as follows:

> All persons in the United States to whom Wells Fargo sent a letter informing them that a recent review of its records indicated that they were enrolled in a product and that they should contact Wells Fargo if they did not authorize or did not want the product.

57.     Plaintiffs bring this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3), on behalf of Plaintiffs and the Subclasses defined as follows:

> All persons in Minnesota to whom Wells Fargo sent a letter informing them that a recent review of its records indicated that they were enrolled in a product and that

they should contact Wells Fargo if they did not authorize or did not want the product.

All persons in Florida to whom Wells Fargo sent a letter informing them that a recent review of its records indicated that they were enrolled in a product and that they should contact Wells Fargo if they did not authorize or did not want the product.

All persons in Nevada to whom Wells Fargo sent a letter informing them that a recent review of its records indicated that they were enrolled in a product and that they should contact Wells Fargo if they did not authorize or did not want the product.

58.    The following people are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their immediate families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and its current or former officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

59.    Plaintiffs reserve the right under Federal Rule of Civil Procedure 23 to amend or modify the Class definition to include a broader scope, greater specificity, further division into subclasses, or limitations to particular issues. Plaintiffs reserve the right under Federal Rule of Civil Procedure 23(c)(4) to seek certification of particular issues.

60.    The requirements of Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3) are met in this case.

61.    The Fed. R. Civ. P. 23(a) elements of Numerosity, Commonality, Typicality, and Adequacy are all satisfied.

*CLASS ACTION COMPLAINT*

62.    **Numerosity**: The exact number of Class members is not available to Plaintiffs, but it is clear that individual joinder is impracticable. Millions of consumers use Wells Fargo for various financial services. Members of the Class can be identified through Defendants' records or by other means.

63.    **Commonality**: Commonality requires that the Class members' claims depend upon a common contention such that determination of its truth or falsity will resolve an issue that is central to the validity of each claim in one stroke. Here, there is a common contention for all Class members as to whether Wells Fargo purchased or subscribed to products without authorization or lawful authority.

64.    **Typicality**: Plaintiffs' claims are typical of the claims of other Class members in that Plaintiffs and the Class members sustained damages arising out of Defendants' uniform wrongful conduct.

65.    **Adequate Representation**: Plaintiffs will fairly and adequately represent and protect the interests of the Class members. Plaintiffs' claims are made in a representative capacity on behalf of the Class members. Plaintiffs have no interests antagonistic to the interests of the other Class members. Plaintiffs have retained competent counsel to prosecute the case on behalf of Plaintiffs and the Class. Plaintiffs and Plaintiffs' counsel are committed to vigorously prosecuting this action on behalf of the Class members.

66.    **This case also satisfies Fed. R. Civ. P. 23(b)(2) - Policies Generally Applicable to the Class**: This class action is appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members and making final injunctive relief appropriate with respect to the Class as a whole.

Defendants' practices challenged herein apply to and affect the Class members uniformly, and Plaintiffs' challenge to those practices hinge on Defendants' conduct with respect to the Classes as a whole, not on facts or law applicable only to Plaintiffs.

67.    The declaratory and injunctive relief sought in this case includes, but is not limited to:

a.   Entering a declaratory judgment against Defendants regarding the aggregate liability to the Class, that Defendants' conduct was unlawful, and that Defendants filed to obtain lawful authorization to engage in the conduct at issue;

b.   Entering an injunction against Defendants requiring Defendants to cease their unlawful conduct complained of in this lawsuit, and to identify and pay Plaintiffs and Class members money that will make them whole, or credit accounts in sufficient amounts for existing customers, and not rely on the insufficient, opaque, burdensome opt in process Defendants have employed to depress claims and keep their liability to a minimum.

68.    **This case also satisfies Fed. R. Civ. P. 23(b)(3) - Predominance**: There are many questions of law and fact common to the claims of Plaintiffs and Class members, and those questions predominate over any questions that may affect individual Class members. Common questions and/or issues for Class members include, but are not necessarily limited to the following:

a.   Whether Defendants' conduct was unauthorized;

b.   Whether Defendants' conduct was unlawful;

c.  Whether Defendants' records identify Class members, and the amount of money to make them whole;

d.  Whether injunctive and declaratory relief, and other equitable relief is warranted.

69.  **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy as joinder of all parties is impracticable. The damages suffered by individual Class members will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the individual Class members to obtain effective relief from Defendants' misconduct. Even if Class members could mount such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be enhanced, and uniformity of decisions ensured.

## COUNT I
### Violation of the California Unfair Competition Law
### Cal. Bus. and Prof. Code § 17200, *et seq*.
### On Behalf of the Class

70.  Plaintiffs incorporate paragraphs 1–69 as if fully set forth herein.

71.  California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq*., protects both consumers and competitors by promoting fair competition in commercial markets for goods and services. California's Unfair Competition Law is interpreted broadly and provides

a right of action for any unlawful, unfair, or fraudulent business act or practice that causes injury to consumers.

72.     Wells Fargo engages in substantial sales and marketing activities in California.

73.     The actions and omissions that give rise to this litigation were conceived, designed, facilitated, instigated, overseen, managed, and coordinated by Defendants' leadership in California, and uniform conduct emanated from California harming Plaintiffs and Class members in the same way, such that California law applies to Plaintiffs' and Class members' claims. California has a substantial interest that its laws be applied to Wells Fargo's conduct alleged herein that substantially outweighs any interests of other states.

74.     Wells Fargo's acts and practices, as described herein, constitute unlawful, fraudulent, or unfair business practices, in that (1) Wells Fargo's practices violate numerous statutes as described herein; (2) the justification for Wells Fargo's practices is outweighed by the gravity of the consequences to Plaintiffs and Class members; (3) Wells Fargo's conduct is immoral, unethical, oppressive, unconscionable, or substantially injurious to Plaintiffs and Class members; and/or (4) the uniform conduct of Wells Fargo has a tendency to deceive Plaintiffs and Class members.

75.     Wells Fargo's unlawful, unfair, and fraudulent business acts and practices, as described above, include, but are not limited to, wrongfully and without authorization enrolling customers in products—using customers' money to pay for fees, costs, and other penalties related to the products—without their knowledge or authorization, and depriving them of any of the supposed benefits of the products that customers were unknowingly enrolled in without their authorization.

76.     Wells Fargo's actions are unlawful because they constitute fraud, conversion, unjust enrichment, and violate the Fair Credit Reporting Act.

**COUNT II**
**Violation of the Fair Credit Reporting Act**
**15 U.S.C. § 1681, *et seq*. ("FCRA")**
**On Behalf of the Class**

77.     Plaintiffs repeat and reallege paragraphs 1–69 as if fully set forth herein.

78.     Each time that Wells Fargo opens a new product or starts a new financial service, it obtains, reviews, and uses a consumer report (as that term is defined in 15 U.S.C. § 1681a(d)) on Plaintiffs and Class members.

79.     Plaintiffs and Class members did not authorize Wells Fargo to obtain or use their consumer reports for such purposes. Wells Fargo obtained and used the consumer reports for impermissible purposes in violation of 15 U.S.C. § 1681b, and opened accounts or enrolled Plaintiffs and Class members in products without authorization in violation of the law.

80.     Wells Fargo obtained and used the consumer reports under false pretenses and without proper authorization from Plaintiffs and Class members in violation of 15 U.S.C. § 1681n(a)(1)(B).

81.     Wells Fargo knowingly and intentionally engaged in the unlawful conduct that violates the FCRA, and is liable under § 1681n and § 1681o for negligent and willful violations of the FCRA.

**COUNT III**
**Violation of the Minnesota Consumer Protection Act**
**M.S.A. § 325F.68, *et seq*.**
**On Behalf of the Minnesota Subclass**

82.     Plaintiff Huber repeats and realleges paragraphs 1–69 as if fully set forth herein.

83.    The Minnesota Consumer Protection Act prohibits unfair or unconscionable trade practices, which are defined as acts or practices that: "(1) offends public policy as established by the statutes, rules, or common law of Minnesota; (2) is unethical, oppressive, or unscrupulous; or (3) is substantially injurious to consumers." M.S.A. § 325F.69.

84.    Wells Fargo's acts and practices, as described herein, constitute unlawful, fraudulent, unfair, or unconscionable acts or practices, in that (1) Wells Fargo's practices violate public policy, common law, and numerous statutes as described herein; (2) the justification for Wells Fargo's practices is outweighed by the gravity of the consequences to Plaintiff Huber and Subclass members; (3) Wells Fargo's conduct is immoral, unethical, oppressive, unscrupulous, unconscionable, or substantially injurious to Plaintiff Huber and Subclass members; and/or (4) the uniform conduct of Wells Fargo has a tendency to deceive Plaintiff Huber and Subclass members.

85.    Wells Fargo's unlawful, unfair, and fraudulent business acts and practices, as described above, include, but are not limited to, wrongfully and without authorization enrolling customers in products—using customers' money to pay for fees, costs, and other penalties related to the products—without their knowledge or authorization, and depriving them of any of the supposed benefits of the products that customers were unknowingly enrolled in without their authorization.

86.    Wells Fargo's unconscionable trade practices take advantage of the lack of knowledge, ability, experience or capacity of Plaintiff Huber and Subclass members to a grossly unfair degree and to their detriment, as Wells Fargo surreptitiously enrolled them into products that they did not want or authorize and Wells Fargo surreptitiously took their money to pay for these products.

87.    Plaintiff Huber and Subclass members suffered actual damages as a result of Wells Fargo's unlawful conduct.

**<u>COUNT IV</u>**
**Violations of the Florida Deceptive and Unfair Trade Practices Act**
**Fla. Stat. §§ 501.201,** *et seq.*
**On Behalf of Plaintiff Kashirina and the FL Subclass**

88.    Plaintiff Kashirina repeats and realleges paragraphs 1-69 as if fully set forth herein.

89.    Plaintiff Kashirina and the Florida Subclass Members are "consumers" as defined by Fla. Stat. § 501.203.

90.    Defendant advertised, offered, or sold goods or services in Florida and engaged in trade or commerce directly or indirectly affecting the people of Florida.

91.    Defendant engaged in unconscionable, unfair, and deceptive acts and practices in the conduct of trade and commerce, in violation of Fla. Stat. § 501.204(1), including:

   a.    Engaging in a practice which, to the consumer's detriment, obtained and used the consumer reports for impermissible purposes in violation of 15 U.S.C. § 1681b;

   b.    Opening accounts or enrolled Plaintiff and Class members in products without authorization in violation of the law;

   c.    Obtaining and using the consumer reports under false pretenses; and

   d.    Obtaining consumer reports without proper authorization. .

92.    Defendant's representations and omissions were material because the Defendant deceived reasonable consumers and intruded into their rights of privacy.

93.    Had Defendant disclosed to the Plaintiff and Subclass members that it was opening accounts and/or obtaining consumer reports, the Defendant would not have been able to obtain consent and/or open the accounts. According, Plaintiff and Subclass members acted

reasonably in believing Wells Fargo would not misuse the Plaintiff and Subclass members personal information.

94.     As a direct and proximate result of Wells Fargo's unconscionable, unfair and deceptive acts and practices, Plaintiff and FL subclass members have and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, as described here.

95.     Plaintiff and FL subclass members seek all monetary and non-monetary relief allowed by law, including actual damages under Fla. Stat. § 501.211; declaratory and injunctive relief; reasonable attorneys' fees and costs, under Fla. Stat. § 501.2105(1); and any other relief that is just and proper.

**<u>COUNT V</u>**
**Violation of the Nevada Trade Regulations and Practices Act**
**Nev. Rev. Stat. § 598.0903, et seq.**
**On Behalf of the Nevada Subclass**

96.     Plaintiffs C. Barker and N. Barker repeat and reallege paragraphs 1-69 as if fully set forth herein.

97.     The Nevada Trade Regulations and Practices Act ("NTRPA") defines a "deceptive trade practice" as follows: "A person engages in a deceptive trade practice if, when the course of his or her business or occupation, he or she knowingly … fails to disclose a material fact in connection with the sale or lease of goods or services." Nev. Rev. Stat. § 598.0923(1)(b).

98.     The NTRPA defines an "unconscionable practice" as "an act or practice which, to the detriment of a consumer, … takes advantage of the lack of knowledge … of the consumer to a grossly unfair degree." Nev. Rev. Stat. § 598.0923(2)(b)(1).

99.     Wells Fargo's acts and practices, as described herein, constitute a deceptive trade practice and an unconscionable practice under the NTRPA, in that Wells Fargo has engaged in a practice which, to consumers' detriment, obtained and used the consumer reports for impermissible purposes in violation of 15 U.S.C. § 1681b, and opened accounts or enrolled Plaintiffs C. Barker and N. Barker and Subclass members in products without authorization in violation of the law.

100.     Wells Fargo obtained and used the consumer reports under false pretenses and without proper authorization from Plaintiffs C. Barker and N. Barker and Subclass members in violation of 15 U.S.C. § 1681b.

101.     Due to Wells Fargo's violations the NTRPA, Wells Fargo is liable to Plaintiffs C. Barker and N. Barker and Subclass members' for actual damages in an amount to be determined at trial, and equitable relief, pursuant to Nev. Rev. Stat. § 41.600(2)(e).

**COUNT VI**
**Unjust Enrichment**
**On Behalf of the Class and Subclass**

102.     Plaintiffs repeat and reallege paragraphs 1–69 as if fully set forth herein.

103.     As a result of Wells Fargo's unlawful and deceptive actions described above, Wells Fargo was enriched at the expense of Plaintiffs and Class and Subclass members through the payment of fees, penalties, interest, premiums, and other charges resulting from the products that Wells Fargo unlawfully and/or deceptively purchased in Plaintiffs', Class members', and Subclass members' names.

104.     Under the circumstances, it would be against equity and good conscience to permit Wells Fargo to retain the ill-gotten benefits that it received from Plaintiffs and Class and Subclass members. Wells Fargo engaged in unlawful, deceptive, and unfair practices to enroll

customers into products without their knowledge or consent in order to obtain benefits from this misconduct. As a result, it would be unjust for Wells Fargo to retain the benefits without restitution to Plaintiffs and Class and Subclass members for the money that Wells Fargo took from them, and disgorgement of the profits obtained by Wells Fargo that are lawfully the proceeds of Plaintiffs and Class and Subclass members is appropriate.

## COUNT VII
### Conversion
### On Behalf of the Class and Subclass

105. Plaintiffs repeat and reallege paragraphs 1–69 as if fully set forth herein.

106. Plaintiffs and Class and Subclass members own and have the right to possess the money that is in their financial accounts with Wells Fargo.

107. Wells Fargo interfered with Plaintiffs', Class members', and Subclass members' possession of their money by wrongfully taking money directly from their accounts on the fraudulent basis that they were fees, costs, payments, or other charges related to these accounts.

108. Plaintiffs and Class and Subclass members never authorized Wells Fargo to take money directly from their accounts to enroll them in products that they did not authorize.

109. Wells Fargo's wrongful taking from Plaintiffs and Class members damaged them in an amount that is capable of identification through Wells Fargo's records.

## COUNT VIII
### Invasion of Privacy by Intrusion Upon Seclusion
### On Behalf of the Class and Subclass

110. Plaintiffs repeat and reallege paragraphs 1-109, as if fully set forth herein.

111. Based on the allegations above, Wells Fargo intentionally interfered with the solitude, seclusion or private concerns or affairs of the Plaintiffs, Class, and Subclass members. Specifically, Wells Fargo has no express authority to obtain the credit reports of the Plaintiffs,

Class, and Subclass members which Wells Fargo knew or should have known were unauthorized and would proximately cause harm to be suffered, including emotional distress when the Plaintiffs, Class, and Subclass members learned of the unauthorized access of their credit reports.

112.    The actions of Wells Fargo into the affairs of the Plaintiffs, Class and Subclass members occurred in such a way that would be highly offensive to a reasonable person.  A reasonable person would not believe that a financial institution would impermissibly obtain a credit report without authorization.

113.    The actions of Wells Fargo described above are a direct result into the personal affairs of the Plaintiffs, Class and Subclass members, and Wells Fargo is liable for actual damages in an amount to be determined and for an amount of punitive damages to be determined.

## PRAYER FOR RELIEF

Plaintiffs, on behalf of themselves and all others similarly situated, pray for a Court order:

A.    Certifying the Class under Rule 23(b)(2) or 23(b)(3), appointing Plaintiffs as the Class Representatives, and Plaintiffs' counsel as Class Counsel;

B.    Finding Defendants' conduct was unlawful, as alleged herein, and entering judgment in favor of Plaintiffs and the Class on the claims asserted herein;

C.    Awarding declaratory relief against Defendants;

D.    Awarding Plaintiffs and Class members injunctive and other equitable relief, including restitution and disgorgement, as allowed by law or equity;

E.   Awarding Plaintiffs and Class members nominal, statutory, actual, compensatory, consequential, incidental, enhanced, and punitive damages, as well as restitution and disgorgement as allowed by law or equity;

F.   Awarding pre- and post-judgment interest;

G.   Awarding reasonable attorneys' fees, expenses, and costs; and

H.   Granting such other relief as the Court deems just and appropriate.

## JURY DEMAND

Plaintiffs request a trial by jury of all claims that can be so tried.


Dated: March 6, 2024                Plaintiffs MATT HUBER, NATALYA KASHIRINA, CHRISTOPHER BARKER, and NAZIA BARKER  individually and on behalf of all others similarly situated,


By: */s/ Alisa Adams*
Alisa Rose Adams (Cal Bar #277697)
The Dann Law Firm
26100 Towne Center Drive
Foothill Ranch, CA 92610-3442
Telephone: (949) 200-8755
Facsimile: (866) 843-8308
*notices@dannlaw.com*
*aadams@dannlaw.com*

Marc E. Dann (*pro hac vice* anticipated)
Brian D. Flick (*pro hac vice* anticipated)
DannLaw
15000 Madison Avenue
Lakewood, OH 44107
(216) 373-0539 telephone
(216) 373-0536 facsimile
*notices@dannlaw.com*

Thomas A. Zimmerman, Jr. (*pro hac vice* anticipated)
ZIMMERMAN LAW OFFICES, P.C.
77 W. Washington Street, Suite 1220
Chicago, Illinois 60602
Telephone: (312) 440-0020

*CLASS ACTION COMPLAINT*
28

Facsimile: (312) 440-4180
*tom@attorneyzim.com*

***Attorneys for Plaintiffs and the Putative Classes***